# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| JUDGE | Janet S. Baer | **Case No.** | 17 B 02284 |
|---|---|---|---|
| DATE | July 1, 2021 | **Adversary No.** | 17 A 00437 |
| CASE TITLE | Maria Keller v. Emil Esmail (In re Emil Esmail) | | |
| TITLE OF ORDER | Order Entering Judgment in Favor of Maria Keller and Against Emil Esmail on Keller's Amended Adversary Complaint Against Esmail for Revocation of Discharge (ECF No. 35) | | |

**DOCKET ENTRY TEXT**

Judgment is entered in favor of plaintiff Maria Keller and against debtor-defendant Emil Esmail on the amended complaint filed by Keller against Esmail. Accordingly, Esmail's discharge is revoked pursuant to § 727(d)(1) of the Bankruptcy Code.
**[For further details see text below.]**

## STATEMENT

This matter is before the Court on the amended adversary complaint filed by plaintiff Maria Keller against debtor-defendant Emil Esmail, seeking a revocation of Esmail's discharge under 11 U.S.C. § 727(d)(1).[1] On June 22, 2021, a trial was held via Zoom at which Keller and Esmail were the only witnesses to testify. Having heard their testimony and reviewed the relevant documents, exhibits, arguments, and case law, and for the reasons set forth below, the Court finds in favor of Keller and against Esmail. As such, Esmail's discharge is revoked.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). *See Steege v. Johnsson (In re Johnsson)*, 551 B.R. 384, 388–89 (Bankr. N.D. Ill. 2016) (explaining that a proceeding to revoke discharge, much like an objection to discharge, can arise only in a case under title 11 and is thus a core proceeding).

## BACKGROUND

Almost all of the material facts in this matter are undisputed. Those facts are as follows. In 2012, Keller and Esmail entered into an arrangement—which they referred to as a "partnership"—

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

1

with respect to the purchase and development of two properties located in Chicago, Illinois.[2] (Dkt. 143-2 at 2.[3]) Pursuant to the arrangement, the parties were to invest in these properties and then, upon sale, share any profits—with 60% going to Esmail and 40% to Keller. (*Id.*) In 2013, however, things apparently went sour. On December 26, 2013, Keller filed a four-count complaint against Esmail in state court, claiming, among other things, that he had breached the agreement between them.[4] (Dkt. 55 ¶ 4; Dkt. 143-3.) Thereafter, on September 13, 2016, Esmail filed a $50,000 counterclaim against Keller in the state court, alleging that he and Keller were partners as to the property located at 5123 S. Union in Chicago ("the Property) and that Keller had breached the partnership agreement. (Dkt. 55 ¶ 5; Dkt. 143-4.)

On January 26, 2017, Esmail filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, as well as his schedules and a Statement of Financial Affairs (together, the "bankruptcy documents"). (Bankr. Dkt. 1.[5]) Esmail did not name Keller as a creditor in his bankruptcy documents, nor did he include in those documents the state court lawsuits pending between the parties, an interest in the Property, or any partnership interest in any venture with Keller.[6] (*Id.*; Dkt. 55 ¶¶ 6, 7.) He also did not disclose to either Keller or the state court that he had filed a bankruptcy petition. (Dkt. 55 ¶ 10.) A no-asset report was filed in the bankruptcy case by the chapter 7 trustee on February 24, 2017. (Bankr. Dkt. 10.) Subsequently, on April 25, 2017, a discharge order was entered, and the case was closed on April 28, 2017. (*Id.,* Dkt. 11, 13.)

On April 10, 2017, prior to the entry of the discharge, the trial of the state court matters began. (Dkt. 55 ¶ 11.) About two months later, on June 7, 2017, the state court entered judgment in favor of Keller and against Esmail in the total amount of $30,000.[7] (*Id.* ¶ 13; Dkt. 143-6 at 2.) On July 27, 2017, after Keller commenced collection proceedings against Esmail, she received a letter from his bankruptcy attorney informing her of the bankruptcy case. (Dkt. 35 ¶ 15.) The uncontested testimony at trial established that neither Keller nor her attorney had any knowledge of the existence of Esmail's bankruptcy case prior to that time.

---

[2] Only Esmail signed the document memorializing the purported agreement. (Adv. No. 17 A 00437, Dkt. 143-2 at 2.) The document was dated June 20, 2012, but was not notarized until August 7, 2012. (*Id.*) In his state court counterclaim against Keller, Esmail alleges that the partnership as to one of the properties—at 5123 S. Union—was formed on April 13, 2012. (*Id.*, Dkt. 35-2 at 1 ¶ 3.)

[3] Unless otherwise noted, all docket references are to Adv. No. 17 A 00437. Exhibit refences are cited according to the docket numbers at which the exhibits were filed—Docket No. 143 in Adv. No. 17 A 00437 for Keller's exhibits and Docket Nos. 32 and 33 in Bankr. No. 17 B 02284 for Esmail's exhibits.

[4] Keller's third amended state court complaint, in Case No. 13 CH 20353, was filed on the grounds of breach of fiduciary duty, malicious prosecution, and false imprisonment. (Adv. No. 17 A 00437, Dkt. 143-3.)

[5] All references to "Bankr. Dkt." are to Bankr. No. 17 B 02284.

[6] A review of Esmail's bankruptcy documents shows that he listed the Property as his home address. (Bankr. Dkt. 1 at 2.)

[7] According to the document itself, the judgment order was entered on June 16, 2017. (Dkt. 143-6 at 2.) Pursuant to the order, the state court found in favor of Keller and against Esmail on Counts I and II of the complaint, in favor of Esmail's daughter—who was also named as a defendant in the complaint—and against Keller on Counts III and IV, and in favor of Keller and against Esmail on the counterclaim. (*Id.*)

2

On August 3, 2017, Keller moved to reopen Esmail's chapter 7 case in order to file an adversary complaint to revoke his discharge. (Bankr. Dkt. 15.) On August 10, 2017, the Court granted the motion, and Keller initiated an adversary proceeding against Esmail by filing a complaint on August 22, 2017. (Bankr. Dkt. 20; Dkt. 1.) On August 7, 2018, after various motions had been filed, briefed, and resolved—including motions to dismiss—Keller filed her amended complaint which is at issue here. (Dkt. 35.) Subsequently, the Property was sold, and on December 10, 2018, the Court entered an order directing that the net proceeds from the sale due to the seller be deposited with the Clerk of the Bankruptcy Court to be held on behalf of Esmail and the chapter 7 estate until further order of the Court. (Dkt. 66; *see also* Dkt. 60, 63.) Those funds, in the approximate amount of $28,500, continue to be held by the Clerk.

## **DISCUSSION**

In her amended adversary complaint, Keller alleges that Esmail's discharge should be revoked pursuant to § 727(d)(1), because he failed to disclose in his bankruptcy documents both his interest in the purported partnership with Keller and the state court counterclaim against her. In addition, Keller alleges that Esmail concealed his interest in the Property, which he owned and controlled, even though the real estate was in his daughter's name. Esmail concedes that he did not disclose the partnership, state court litigation, or Property in his schedules or Statement of Financial Affairs ("SOFA"). He testified, however, that his failure to do so was neither intentional nor fraudulent and that he did not have an ownership interest in the Property.

Section 727(d)(1) provides that a debtor's discharge must be revoked if it "was obtained through the fraud of the debtor, and the [plaintiff] did not know of such fraud until after the granting of such discharge[.]" 11 U.S.C. § 727(d)(1). To prevail under § 727(d)(1), Keller must prove by a preponderance of the evidence that: (1) Esmail's discharge was obtained through fraud, and (2) Keller lacked knowledge of the fraud until after the discharge was granted. *See Hansen v. Soukup (In re Soukup)*, Case No. 17bk16894, Adv. Proc. No. 18ap00764, 2021 WL 210795, at *4 (Bankr. N.D. Ill. 2021); *Goldstein v. Zilberbrand (In re Zilberbrand)*, 602 B.R. 53, 57 (Bankr. N.D. Ill. 2019); *Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 478–79 (Bankr. N.D. Ill. 2007), *aff'd,* No. 07 C 6012, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008).

As to the first element, Keller must show "fraud in the procurement of the discharge"—not simply fraud toward her. *See First Nat'l Bank of Harrisburg v. Jones (In re Jones)*, 71 B.R. 682, 684 (S.D. Ill. 1987); *Zilberbrand,* 602 B.R. at 57 (quoting *Jones*). In addition, the fraud must be "fraud in fact"—meaning an intentional wrong. *Eckert*, 375 B.R. at 479 (internal quotation omitted). In other words, Esmail must have had "an intent to deceive." *See Chi. Patrolmen's Fed. Credit Union v. Maxwell (In re Maxwell)*, 597 B.R. 418, 423 (Bankr. N.D. Ill. 2019). Direct evidence of intent, however, is not required. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). Rather, intent can be inferred "from a course of conduct" or "from all of the surrounding circumstances." *Id.*

To demonstrate the second element, Keller must show that she neither knew nor could have known of the fraud until after the granting of Esmail's discharge. *See Zilberbrand,* 602 B.R. at 57. For purposes of § 727(d)(1), Keller knew of the fraud only if she had facts or other information

3

that "would ordinarily put a reasonable person on notice." *See Smith v Seferian,* No. 11 C 5036, 2011 WL 6753989, at *3 (N.D. Ill. Dec. 21, 2011).

Keller has established both of the elements required for revocation of Esmail's discharge under § 727(d)(1).

With respect to the first, Keller says that Esmail committed fraud in the procurement of his discharge by intentionally concealing what he should have disclosed—the partnership with her, the state court lawsuits, and Esmail's interest in the Property. According to Keller, Esmail fraudulently withheld that information because he was hoping to prevail in the state court and collect a judgment, outside the reach—and knowledge—of the bankruptcy court. Esmail, of course, denies that he intended to conceal anything or defraud anyone.

As to the partnership with Keller and the state court litigation, Esmail admitted at trial that, when he filed his chapter 7 petition and signed his bankruptcy documents under oath, he did not tell his attorney of the existence of either the partnership or the state court lawsuits. Esmail was not able to provide a plausible explanation for his failure to disclose the information or, for that matter, to inform Keller and the state court judge that he had filed for bankruptcy. Rather, Esmail said only that he did not know he was required to make the disclosures. His testimony, however, was not credible in light of the fact that he had been represented by bankruptcy counsel when he filed his chapter 7 case and that several other lawsuits had been disclosed in his bankruptcy documents. (*See* Bankr. Dkt. 1 at 55.) Likewise, the documents listed Esmail's previous interests in other businesses, but they were silent as to the venture with Keller. (*Id.* at 59.)

Regarding the Property, Esmail testified that he did not disclose in his bankruptcy documents any interest in the Property because he did not own it. Indeed, there was no dispute that Esmail's daughter, Monica Esmail, held title to the Property. However, the testimonial and documentary evidence showed that Esmail was the one who had paid the purchase price for the Property, managed its development and improvement, controlled the Property, and filed an appearance in the City of Chicago's Complaint for Equitable and Other Relief with respect to the failure to pay certain bills on the Property. (Dkt. 143-2 at 2; Dkt. 143-10; Bankr. Dkt. 33 at 2–3, 14–16, 18–20.) Notwithstanding the foregoing, in response to Question 23 of his SOFA—"Do you hold or control any property that someone else owns?"—Esmail answered "No." (Bankr. Dkt. 1 at 58.) Further confusing the issue, Esmail listed the Property as his home address. (*Id.* at 2.)

The Court need not decide whether the Property was actually owned by Esmail in order to determine that he fraudulently failed to disclose it. Given the evidence, the Property was originally purchased with Esmail's funds, it was put into his daughter's name for no consideration, and, at the time that the chapter 7 case was filed, the state court litigation with Keller was still ongoing. Thus, there is no question that Esmail had a sufficient interest in the Property or the proceeds of its sale pursuant to the agreement with Keller—as well as control over the Property—such that it should have been disclosed in response to Question 23 of the SOFA.[8]

---

[8] It may have also been appropriate to disclose the Property in response to Question 19 of the SOFA— "Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?" In response, Esmail answered "Yes" and described the property transferred as "[v]arious real estate, vacant lots, as listed in [s]chedule A." (Bankr. Dkt. 1 at 57.) Schedule A, in turn, discloses

4

When questioned at trial by his own lawyer regarding his failure to make the required disclosures, as well as to inform Keller and the state court that he had filed for bankruptcy, Esmail said repeatedly that he did not intend to deceive either Keller or the bankruptcy court. His testimony in that regard, however, did not ring true. Rather, it appeared rehearsed and robotic. The Court finds that Esmail's testimony was self-serving and lacked credibility. *See Johnsson,* 551 B.R. at 406–07; *see also Deady v. Hanson* (*In re Hanson*), 432 B.R. 758, 776 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012) (explaining that the court is in "the best position to assess the credibility of the witnesses and weigh the evidence"); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 895 (Bankr. N.D. Ill. 2003) (noting that courts are reluctant to "accept a debtor's own self-serving statement of his intent as the best evidence of that intent" (internal quotation omitted)).

Based on that testimony, the documentary evidence, Esmail's course of conduct, and all of the surrounding circumstances, Keller has established fraud in the procurement of Esmail's discharge. Thus, the first element of § 727(d)(1) has been satisfied.

As to the second, Keller neither knew nor could have known of the fraud until after Esmail's discharge had been granted. It is undisputed that Keller had no knowledge of Esmail's bankruptcy case prior to both the entry of the state court judgment in her favor and the commencement of her post-judgment collection proceedings against him. Esmail himself admitted that he did not tell either Keller or the state court judge that he had filed for bankruptcy or that he had obtained a discharge just two weeks after the trial of the state court matters began. Keller simply had no facts or other information that would have reasonably put her on notice of Esmail's fraud. As such, Keller has also established the second element of § 727(d)(1).

## CONCLUSION

For the foregoing reasons, the Court finds that Esmail fraudulently procured his chapter 7 discharge and that Keller did not know about the fraud until after the entry of the discharge order. Accordingly, judgment is entered in favor of Keller and against Esmail, and Esmail's chapter 7 discharge is revoked pursuant to § 727(d)(1).

**DATED**: July 1, 2021              **ENTERED**:

_____
Janet S. Baer
United States Bankruptcy Judge

---

twenty-two properties in Chicago, each with a current value of "1.00," but does not include the Property. (*Id.* at 11–22.)

5